**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HUHN, dba Huhn Electric, | No.  2:25-CV-1777-DMC |
| Plaintiff, | |
| v. | ORDER |
| CITY OF RED BLUFF, et al., | |
| Defendants. | |

Plaintiff, who is proceeding with retained counsel, brings this civil action.  The parties have consented to Magistrate Judge jurisdiction and the case has been reassigned.  See ECF No. 18.  Pending before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint.  See ECF No. 25.  Plaintiff has filed an opposition, see ECF No. 27, and Defendants have filed a reply, see ECF No. 29. The parties appeared for a hearing before the undersigned on March 4, 2026, at 10:00 a.m., via Zoom.  Randall Shrout, Esq., appeared for Plaintiff.  Derick Konz, Esq., appeared for Defendants.  This order shall confirm the Court's oral ruling from the bench.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

1

738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

2

of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I.  BACKGROUND

### A.    Procedural History

Plaintiff initiated this action in state court, which Defendants removed to this Court on June 25, 2025.  See ECF No. 1.  In the original complaint, Plaintiff asserted one federal claims and a number of state law claims, as follows:

| | |
|---|---|
| FIRST CLAIM | Retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 (against all Defendants). |
| SECOND CLAIM | Violation of the California Public Records Act (against Defendant City of Red Bluff). |
| THIRD CLAIM | Violation of the California Solar Rights Act (against Defendant City of Red Bluff). |
| FOURTH CLAIM | Unlawful business practices (against Defendant City of Red Bluff). |
| FIFTH CLAIM | Negligence (against all Defendants). |
| SIXTH CLAIM | Intentional interference with prospective economic advantage (against all Defendants). |

ECF No. 1, pgs. 12-21.

Defendants filed a motion to dismiss Plaintiff's original complaint on July 29, 2025. See ECF No. 9.  The Court held a hearing on November 19, 2025, at which time Defendants' motion to dismiss was granted with leave to amend.  See ECF No. 22 (hearing minutes); see also ECF No. 24 (order after hearing).  This action now proceeds on Plaintiff's first amended complaint filed on December 18, 2025.  See ECF No. 23.

///

///

3

B.     **Plaintiff's Allegations**

As Defendants note in the pending motion to dismiss – and which Plaintiff does not dispute – the allegations in the first amended complaint are substantially identical to those in the original complaint initiated in state court and which was the subject of the prior motion to dismiss.  The Court previously summarized Plaintiff's allegations as follows:

> . . .Plaintiff, a licensed electrical contractor, is an individual doing business as Affordable Solar Energy.  See [ECF No. 1, pg.] 6.  Plaintiff names the following as defendants: (1) City of Red Bluff; (2) Beth Lindauer, the City of Red Bluff's Community Development Director; (3) Tom Westbrook, the City of Red Bluff's City Manager; and (4) Anita Rice, the City of Red Bluff's Deputy City Clerk.  See id. at 6-7.
>
> Plaintiff states that, in October 2024, he was contracted to install a solar energy system at the First Church of God, a commercial property located in Red Bluff.  See id. at 8.  Plaintiff submitted to the City of Red Bluff a building plan for a commercial solar installation permit on October 16, 2024.  See id.  On October 17, 2024, Plaintiff received an invoice for permit application fees in the amount of $1,000.00, which Plaintiff asserts is the maximum amount allowed under the California Solar Rights Act.  See id.  This fee included a charge of $188.00 for a fire department inspection.  See id.
>
> Plaintiff was informed that he could not pay the full fees online because the City of Red Bluff's online payment application only accepted payments up to $550.00.  See id.  As a result, Plaintiff reported in-person to pay the fees and was told he could make separate payments through the online application.  See id.  Plaintiff states, however, that the online application would not accept separate payments.  See id.
>
> Plaintiff began preliminary work on the solar project on October 18, 2024.  See id.  During this process, Plaintiff discovered significant structural issues on the church roof that required changes to the original building plan and layout.  See id.  Based on these findings, Plaintiff revised the installation layout.  See id. at 9.  On October 21, 2024, an inspector for the City of Red Bluff issued a stop-work order on the project because the initial permit process had not been finalized and because the installation layout no longer matched the plans originally submitted.  See id.  The same day, Plaintiff went to the city's offices to complete payment and explain the layout changes.  See id.
>
> When Plaintiff appeared again at the city's offices to pay the permit fees, he was informed that a permit would not be issued because the current layout plan no longer matched the plan submitted with the original permit application.  See id.  Plaintiff explained to city officials, including Defendant Lindauer, that the layout changes were required for structural safety and requested that the city issue the permit and allow him to submit an updated plan.  See id.  Plaintiff alleges that, despite accepting Plaintiff's payment of $1,000.00, no permit was issued.  See id.
>
> Plaintiff also states that, during this interaction with city officials, he questioned the legality of the $188.00 fire department inspection fee based on lack of any city ordinance or resolution authorizing such a fee.  See id.  Plaintiff further argued that the fire department inspection would be duplicative of the inspection which was already required by the Building Department.  See id.

4

Plaintiff claims that, in response to his questions about the fire department inspection fee, Defendant Lindauer "issued a retaliatory threat." Id. Plaintiff claims:

> . . . She [Defendant Lindauer] stated that if Plaintiff continued to challenge the commercial solar inspection fees, she would instruct the fire department to reinstate the residential solar permit fees. Those residential fees had previously been eliminated following Plaintiff's earlier objections to their legality. This threat directly tied the possibility of adverse government action to Plaintiff's constitutionally protected speech. The statement had the clear potential to chill future speech, precisely the type of retaliatory conduct that is prohibited under the established First Amendment jurisprudence.
>
> Id.

Plaintiff states that a permit was ultimately issued on October 24, 2024. See id. at 10. Following the incident with Defendant Lindauer, Plaintiff contacted the City Manager, Defendant Westbrook to report the retaliatory threat. See id. Defendant Westbook reported to Plaintiff that he would review surveillance footage of Plaintiff's encounter with Defendant Lindauer. See id. While Defendant Westbook promised to follow up, Plaintiff contends he never did so. See id. On October 28, 2024, Plaintiff submitted a formal public records request seeking: (1) all ordinances pertaining to residential and commercial solar permit fees; (2) audio and video recordings from the encounter with Defendant Lindauer; and (3) any ordinance or written authorization allowing the fire department to impose inspection fees for solar installations. See id. at 10-11. On November 19, 2024, Plaintiff called city offices to inquire about his records request. See id. at 11. According to Plaintiff, Defendant Rice, who is the Deputy City Clerk, informed Plaintiff that the city believed his request had "gone away" because Plaintiff previously met with city officials. Id. Plaintiff states that he told Defendant Rice that he never withdrew his request. See id. Plaintiff adds that, on November 20, 2024, Defendant Rice sent Plaintiff an email providing some, but not all, of the requested documents. See id. According to the November 20, 2024, email, Defendant Rice stated that surveillance video footage from October 23, 2024, was no longer available. See id. Plaintiff contends that, as of the filing of the complaint, he still had not received all of the requested records. See id.

ECF No. 24, pgs. 3-5.

///

///

///

///

///

5

## II.  DISCUSSION

In their motion to dismiss the first amended complaint, Defendants renew their argument that Plaintiff's allegations, which have not changed from the original complaint, fail to show that adverse action was taken as would support the sole federal claim for retaliation in violation of the First Amendment.  See ECF No. 25.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the plaintiff must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The plaintiff must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  The essential elements of a retaliation claim are well-established and not in dispute – the plaintiff must establish the following in order to state a claim for retaliation: (1) government officials took adverse action against the plaintiff; (2) the adverse action was taken because the plaintiff engaged in protected conduct; (3) the adverse action chilled the plaintiff's First Amendment rights; and (4) the adverse action did not serve a legitimate governmental purpose. See Rhodes, 408 F.3d at 568.

In resolving Defendants' motion to dismiss Plaintiff's original complaint, the Court determined that Plaintiff had failed to allege facts to show that adverse action was taken. See ECF No. 24, pg. 7.  Whether Plaintiff now does so in the first amended complaint is the question before the Court.  At issue is Plaintiff's assertion that Defendant Lindauer threatened to impose increased inspection fees if Plaintiff continued to question the imposition of fees.

/ / /

/ / /

/ / /

6

According to both the original complaint and first amended complaint, the alleged threat was made by Ms. Lindauer during an interaction among Plaintiff and various other city officials on October 21, 2024, concerning Plaintiff's complaint about inspection fees. See ECF No. 1, pg. 9 (original complaint) and ECF No. 23, pg. 5 (first amended complaint). Plaintiff's allegations reflect a very specific series of events which occurred on October 21, 2024, as follows:

- A city inspector issued a stop order on Plaintiff's solar panel installation project.

- Plaintiff then went to the city's offices to complete his payment for fees.

- City officials explained that a permit could not be issued because the project plans had been changed since originally submitted.

- Plaintiff explained to city officials, including Ms. Lindauer, that the plans were revised to address structural issues.

- Plaintiff requested that the city issue the permit and allow submission of revised plans.

- Plaintiff tendered, and the city accepted, permit and inspection fees of as invoiced.

- During this interaction with city officials, including Ms. Lindauer, Plaintiff questioned the legality of inspection fees being assessed.

- In particular, Plaintiff stated that a Building Department inspection fee would be duplicative of a Fire Department inspection fee because both departments would be inspecting the same project.

- Plaintiff questioned the legality of duplicative fees.

- Ms. Lindauer agreed to waive the Fire Department inspection fee upon Plaintiff's objection.[1]

/ / /

/ / /

/ / /

---

[1]   Plaintiff states: "Those residential fire inspection fees had previously been eliminated following Plaintiff's earlier objections to their legality." ECF No. 23, pg. 5. Plaintiff also alleges that Ms. Lindauer said she would reinstate "solar permit fees." Id. Liberally construing Plaintiff's first amended complaint, the Court may reasonably infer that Plaintiff alleges Ms. Lindauer agreed to waive the Fire Department inspection fee.

- In response to Plaintiff's questioning of the legality of inspection fees, Ms. Lindauer "stated that if Plaintiff continued to challenge the commercial solar inspection fees, she would instruct the fire department to reinstate residential solar permit fees."

- Plaintiff requested expedited permit processing.

ECF No. 23, pg. 5.

According to Plaintiff, the permit was issued three days later on October 24, 2024.  See id.

At the November 19, 2025, hearing on Defendants' motion to dismiss the original complaint, Plaintiff's counsel focused on Ms. Lindauer's comment regarding reinstatement of fees and added: "It was the threat of 'we'll raise your fees if you question us' is what we're concerned about."  According to Plaintiff, this "threat" constitutes the adverse action supporting his First Amendment retaliation claim.  Plaintiff's counsel reiterated this contention at the March 4, 2026, hearing.

The Court recognizes Ninth Circuit precedent holding that threats of adverse action may be sufficient.  See Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012); see also Broadheim v. Cry, 584 F.3d 1262 (9th Cir. 2009).  In Watison, a correctional officer walked directly up to an inmate and told the inmate that he would hit him in the mouth because the inmate had filed grievances against the correctional officer.  See Watison, 668 F.3d 1108.  The Ninth Circuit held, in revieing a district court's dismissal of the inmate's retaliation claim, that the threat constituted sufficient adverse action.  See id.  In Broadheim, the court considered a handwritten threat by a prison correctional officer that the inmate plaintiff would be transferred or disciplined if the inmate failed to comply with an order.  See 584 F.3d at 1270.  The court held that this threat was sufficient to establish, if proved, an adverse action and reversed the district judge's application of a standard that required evidence that the threatened action actually occurred.  See id.  In so holding, the Ninth Circuit cited the Second Circuit, stating:

As the Second Circuit held in a related context, the question for the district court to ask is whether "the record, taken in the light most favorable to the plaintiff, reveals statements by the defendant that a reasonable factfinder could . . . interpret as intimating that some form of punishment or adverse regulatory action would follow."

Id.

8

This is not a case where Plaintiff's allegations lack detail or specificity. On the contrary, Plaintiff's detailed account of October 21, 2024, reveals a very specific set of events, which the Court presumes to be true. On October 21, 2024, Plaintiff appeared at the city's offices and paid the various fees requested by the city as invoiced. These fees included separate inspection fees charged by the Building Department and Fire Department. After accepting Plaintiff's payment, city officials continued to meet with Plaintiff regarding his complaint that the separate inspection fees were duplicative. In the midst of this discussion, Ms. Lindauer apparently waived certain fees. As Plaintiff continued to complain about the legality of what he characterized as duplicative fees, Ms. Lindauer made the comment Plaintiff now characterizes as the actionable threat – that fees would be "reinstated" if Plaintiff continued to complain. At the conclusion of Plaintiff's interactions with city officials, he asked that his permit application be expedited. Plaintiff left the meeting with city officials having paid all the fees charged, including the separate Building Department and Fire Department inspection fees.

The "threat" alleged by Plaintiff is not like the actual threat of unauthorized physical violence at issue in Watison. Nor is the comment allegedly made by Ms. Lindauer similar to the threat to an inmate of transfer or discipline considered in Broadheim. Unlike Ms. Lindauer's comment in this case – that she would "reinstate" a fee which Plaintiff had already paid and which had never been officially excused – the threats in Watison and Broadheim were of some form of new punishment (being hit in the mouth and being transferred or disciplined). Ms. Lindauer's comment did not threaten additional fees. Rather, Ms. Lindauer's comment indicated a return to the status quo as it was before the October 21 meeting with city officials occurred. While Ms. Lindauer's approach may have amounted to an impolitic end of discussions with a concerned citizen, the Court finds that the facts alleged in the first amended complaint, in the context of the detail provided by Plaintiff, do not satisfy the necessarily element of adverse action.

/ / /

/ / /

/ / /

9

Plaintiff's retaliation claim – the only federal claim presented in this case – will be dismissed with prejudice.  The Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will remand this action back to state court.[2]  See Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001).

### III.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1.      Defendants' motion to dismiss, ECF No. 25, is granted as to Plaintiff's retaliation claim, which is dismissed with prejudice.

2.      The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

3.      This matter is remanded to the Tehama County Superior Court.

Dated:  March 4, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

---

[2]      The Court expresses no opinion as to Defendants' arguments relating to the sufficiency of Plaintiff's state law claims.